UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: RAY A. GALVAN, fdba SPEEDY
TOWING AND RECOVERY,

Debtor.                                              Case No. 7-07-12000 ML

_____

MARK AND COREY ARMENDARIZ,

   Plaintiffs,

v.                                                   Adv. No. 07-1167 M

RAY A. GALVAN, fdba SPEEDY
TOWING AND RECOVERY,

   Defendant.

## ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on Plaintiffs' Complaint for Determination of Dischargeability. Plaintiffs seek to have their debt of $ 92,573.72 plus interest declared nondischargeable under either 11 U.S.C. §523(a)(4) or §523(a)(6) as a debt for fraud or defalcation while acting in a fiduciary capacity or for willful and malicious injury by the debtor to plaintiffs or their property. Plaintiffs filed a Motion for Summary Judgment and Affidavits in support of the Motion on August 29, 2008 and a Reply in Support of the Motion on October 13, 2008. Defendant filed a Response to the Motion for Summary Judgment on September 29, 2008.

Plaintiffs' claim arises as a result of Defendant's towing, storage and eventual sale of four freight trailers owned by Plaintiffs. Plaintiffs assert that Defendant wrongfully converted their property and money resulting in Plaintiffs' inability to satisfy a debt to the IRS including the accrual of interest and penalties. Plaintiffs seek recovery of treble damages plus interest

1

awarded by a state court judgment entered against Defendant for conversion. Defendant claims that Plaintiffs have failed to meet their burden under either non-dischargeability provision by failing to set forth sufficient evidence to support their claim. Defendant further asserts that the state court judgment is not binding in the instant proceeding. The Court after consideration of the pleadings and briefs, the uncontroverted facts, and applicable law finds the Plaintiffs' motion for summary judgment should be denied.

### A. Summary Judgment Standard

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P., made applicable to bankruptcy proceedings by Rule 7056, Fed.R.Bankr.P. The party requesting summary judgment must demonstrate to the Court that the undisputed facts entitle the movant to judgment as matter of law.[1] The party opposing summary judgment may not rest upon allegations or denials contained in its own pleading, but must "set out specific facts showing a genuine issue for trial." Rule 56(e)(2), Fed.R.Civ.P. To successfully defend against a motion for summary judgment, the affidavits and/or other documentation offered by the party opposing summary judgment must contain probative evidence that would allow a trier of fact to find in Defendant's favor.[2] In determining whether summary judgment should be granted, the Court

---

[1] See *Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). ("[A] party seeking summary judgment always bears the initial responsibility of informing the ... court of the basis for its motion, and ... [must] demonstrate the absence of a genuine issue of material fact.").

[2] *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)

2

must view the facts in the light most favorable to the party opposing summary judgment.[3]

### B. Undisputed Facts

It is undisputed that on April 19, 2005 Defendant towed four freight trailers from Travel Centers of America in Las Cruces, New Mexico. *See Memorandum in Support of Armendarizes' Motion for Summary Judgment ("Plaintiff MSJ"), ¶ 1; Response to Motion for Summary Judgment ("Response"), ¶ 1.* Defendant was contacted by the owner of the Travel Centers of America to remove the trailers from his property. *See Complaint by Mark and Corey Armendariz for Determination of Dischargeability ("Complaint"), ¶ 6; Answer to Complaint ("Answer"), ¶1*. At the time Defendant took possession of the trailers they were owned by Mark Enterprise, Inc. ("MEI"). *Complaint, ¶9; Answer, ¶1.* Defendant gave notice to MEI on or about May 11, 2005, asserting a debt and lien under NMSA 1978, §48-3-13. *Plaintiff MSJ, ¶4; Response, ¶1.* Plaintiffs contacted Defendant in early June regarding their intention to redeem their property. *Plaintiff MSJ, ¶5; Response, ¶3.* Defendant sold the trailers on June 29, 2005 through a private sale. *Complaint, ¶14, 16; Answer, ¶1.* Defendant did not refund to the Plaintiffs the difference between the amount received from the sale of the trailers and the amount of the debt claimed in the notice given to MEI on May 11, 2005. *See Complaint, ¶19; Answer, ¶1.*

---

[3] *Harris v. Beneficial Oklahoma, Inc.*, (*In re Harris*), 209 B.R. 990, 995 (10th Cir.BAP2007)("When applying this standard, we are instructed to 'examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.' ")) *Wolf v. Prudential Ins. Co. of America*, 50 F.3d 793, 796 (quoting *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990)(internal quotation marks omitted); *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir.1994)(stating that the court must "view all facts and any reasonable inferences that might be drawn from them in the light most favorable to the nonmoving party ...").

**C. Collateral Estoppel**

As a threshhold matter this Court will address Defendant's claim that the state court judgment should not be binding. "Collateral estoppel, or issue preclusion, is a doctrine that prohibits the relitigation between the same parties of issues of ultimate fact that have been determined by a valid and final judgment."[4] The doctrine of collateral estoppel applies to dischargeability actions[5]. Thus when the elements of a prior claim are identical to the elements required to establish an exception to discharge, it is appropriate for the Court to give collateral estoppel effect to those elements that "were actually litigated and determined in the prior action."[6] Summary judgment on a non-dischargeability claim may, therefore, be granted based on a prior judgment obtained outside of bankruptcy provided that the prior judgment establishes all elements necessary to the determination of non-dischargeability under the Bankruptcy Code.

In the state court litigation, Plaintiffs moved for partial summary judgment against the Defendant. Defendant failed to file any pleadings in opposition or appear at the hearing on the motion and the Court entered judgment in favor of Plaintiffs. Defendant asserts that he was unable to oppose the motion for summary judgment because of his inability to compensate counsel to represent him. In addition, Defendant asserts that he was not informed about the hearing on the summary judgment motion. Essentially, Plaintiffs received a default judgment against Defendant in the state court. "Not all default judgments will have, nor should they have,

---

[4] *In re Armstrong*, 294 B.R. 344, 357 (10th Cir. BAP 2003), aff'd, 97 Fed. Appx. 285 (10th Cir.2004)(quoting *Phelps v. Hamilton*, 122 F.3d 1309, 1318 (10th Cir.1997)).

[5] *Grogan v. Garner*, 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 658, 112 L.Ed.2d 755 (1991) ( "We now clarify that collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a). " ).

[6] *Id.* at 284.

4

preclusive effect on dischargeability issues in Bankrutpcy Court".[7] "A default judgment merely disposes of the cause of action and is not a reliable adjudication of any issue for that case, and should not have a collateral estoppel effect in a bankruptcy dischargeability proceeding."[8] In *In re Hubbard*, the Court reasoned that a party's opportunity to litigate should not be given the same effect as "actual litigation" unless application of the estoppel to a subsequent proceeding was foreseeable.[9] This Court finds that Defendant did not participate fully in "actual litigation." Therefore, the state court judgment does not have a collateral estoppel effect in this adversary proceeding.

### D. 11 U.S.C.§523(a)(4)

The first theory under which Plaintiffs seek a determination as to non-dischargeability of their of the debt is 11 U.S.C. §523(a)(4) which states that, "... a debt is -non-dischargeable if the debtor committed "fraud or defalcation while acting in a fiduciary capacity..." 11 U.S.C. §523(a)(4). To prevail under this subsection, Plaintiffs must establish that a fiduciary relationship between themselves and Defendant existed, that funds or property were entrusted to the Defendant, and that Defendant committed fraud or defalcation in the course of that fiduciary relationship.[10] Once that proof is made, the burden shifts to the debtor-fiduciary to account for

---

[7] *In re Austin*, 93 BR 726, 728 (Bankr.D.Colo1988).

[8] *In re Hubbard*, 167 BR 969, 972 (Bankr.D.N.M.1994).

[9] *Id.* at 972.

[10] *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1267, 1371 (10th Cir. 1996)(stating that creditor has the burden to prove the fiduciary relationship; existence of fiduciary relationship is a legal issue);*Watson v. Parker (In re Parker)*, 264 B.R. 685, 700 (10th Cir. BAP 2001) *Antlers Roof-Truss & Builders Supply v. Storie (In re Storie)*, 216 B.R. 283, 286 (10th Cir. BAP 1997).

5

the entrusted funds.[11] Plaintiffs reliance on their assertion that Defendant was a fiduciary under 11 U.S.C. §523 (a)(4) is misplaced. Plaintiffs argue that the lien statutes imposed a bailment duty on Defendant with respect to the trailers and as such Defendant was a fiduciary. The meaning of the term "fiduciary" is an issue of federal law.[12]

Federal courts have found that the general definition of fiduciary, a relationship involving confidence, trust and good faith, is too broad in the dischargeability context.[13] Consequently, federal courts have limited the fiduciary relationship contemplated in 11 U.S.C. §523(a)(4) to one arising out of a pre-existing express or technical trust, not an implied, resulting, or constructive trust.[14] The trust giving rise to the fiduciary relationship must be imposed prior to any wrongdoing; the debtor must have been a "trustee" before the wrong and without reference to it.[15] Although the concept of fiduciary is to be narrowly defined as a matter of state law, state

---

[11] *In re Tatro*, 387 B.R. 833, 839 (Bankr.Kan.,2008)(citing *Otto v. Niles (In re Niles)*, 106 F.3d 1456 (9th Cir.1997); *Storie*, 216 B.R. at 288. (burden shifts to the debtor-fiduciary to render an accounting to show that it complied with its fiduciary duties, citing *In re Niles* with approval and further noting that the Tenth Circuit never reached whether a defalcation had occurred in *In re Young* and therefore did not reach the appropriate burden of proof for proving a defalcation).

[12] *See Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934).

[13] *In re Van De Water,* 180 B.R. 283, 289 (Bankr.D.N.M. 1995)(citing *In re Angelle*, 610 F.2d 1335, 1338-39 (5th Cir.1980)).

[14] *In re Romero*, 535 F.2d 618 (10th Cir.1976); *In re Talcott*, 29 B.R. 874 (Bankr.D.Kan.1983).

[15] *Davis*, 293 U.S. at 333, 55 S.Ct. at 153; *Van De Water,* 180 B.R. at 289 (citing *In re Ragsdale*, 780 F.2d 794, 796 (9th Cir.1986) ("...trusts *ex maleficio* are not included within the purview of 523(a)(4)")).

6

law is still a very important factor in determining when a technical or express trust exists.[16] Section 523(a)(4), insofar as it relates to a debtor acting in a fiduciary capacity, does not apply to frauds of agents, bailees, brokers, factors, partners, and other persons similarly situated.[17] Furthermore, a debtor is not a fiduciary, within the meaning of 11 U.S.C. §523(a)(4), when the debtor is merely in the position of an agent, bailee, broker, factor, partner, or other similarly situated person, unless some additional fact is shown.[18] Courts have found that absent additional facts or special considerations, 11 U.S.C. §523(a)(4) does not extend to the more general class of fiduciaries such as agents, bailees, brokers, factors, and partners.[19]

Express or technical trusts may be created by statute.[20] "A state statute must meet three requirements to trigger section 523(a)(4)'s fiduciary status: (1) the trust res must be defined by the statute, (2) the statute must spell out the fiduciary duty, and (3) the statute must impose a trust on funds prior to the act creating the debt."[21]

Plaintiffs argue that NMSA§48-3-15, which sets forth the procedures for disposing of

---

[16] *In re Shultz*, 205 B.R. 952, 958 (Bankr.D.N.M. 1997)( Applicable state law determines whether a express or technical trust relationships exist; and whether a trust was created. The Court ascertains whether a basis exists for finding a debtors status imposed a fiduciary obligation sufficient to meet the strictures of §523(a)(4)).

[17] *In re Kichler*, 226 B.R. 910, 913 (Bankr.D.Kan. 1998)(citing 3 Collier on Bankruptcy 523.14[1][c] at 523-92 (15th ed. 1996) ; *In re Weiner* 95 B.R. 204, 207( Bankr.D.Kan.1989.)

[18] *Id.*

[19] *In re Goseland,* 114 B.R. 263, 268-269, (Bankr.D.Kan.1990); *Kichler,* 226 B.R. at 913; *In re McKnew* 270 B.R. 593, 624 (Bankr.E.D.Va. 2001); *Matter of Adams* 24 B.R. 252, 254 (Bankr.D.Mo.1982);

[20] *Allen v. Romero (In re Romero)*, 535 F.2d 618, 621-622 (10th Cir.1976).

[21] *In re Baker,* __ B.R. __, 2008 WL 753738, *3 (Bankr.D.N.M.2008)(citing *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 333 (1934)).

7

sale proceeds by a lien claimant, imposes a fiduciary duty on Defendant. NMSA§48-3-15 states:

> After sale made as provided in the preceding section [48-3-14 NMSA 1978], the proceeds of such sale shall be applied to the payment of the costs of advertising and making the sale and the satisfaction of the demand of the lien claimant, and the residue, if any, shall be refunded to the lien debtor; provided, that the lien claimant shall not be precluded from bidding on or purchasing the property at such sale.

Defendant argues that the licensing laws that apply to tow truck operators do not impose a fiduciary duty that rises to the level of an express or technical trust. While the lien statute cited by Plaintiff does state that any residual proceeds are to be refunded to a lien debtor, it does not contain any specific trust language. In fact, the language of the statute indicates that if any trust arises, said trust would only arise after the residual proceeds are withheld. Therefore, any wrong committed by not refunding the residual proceeds would not give rise to a fiduciary relationship contemplated by the case law in the Tenth Circuit allowing recovery under section 523(a)(4).[22]

      Here, it is uncontroverted that the Defendant was contacted by the property owner where Plaintiffs' trailers were parked to have the trailers removed. Defendant towed and stored the trailers and as a result asserted a debt and a lien which was satisfied by Defendant's sale of the trailers. It is also undisputed that Defendant failed to refund residual proceeds to the Plaintiffs. Plaintiffs assert that the lien statutes impose a bailment duty on the Defendant and that as a bailee, Defendant is a fiduciary under section 523(a)(4). Even if Defendant is a bailee, the lien statutes do not create a technical trust that imposes a fiduciary duty on the Defendant. Therefore, the Court finds that there was no trust relationship established between the parties rising to the level required by section 523(a)(4).

---

[22] *In re Tucker*, 346 B.R. 844, 850 (Bankr.E.D.Okla.,2006)(the fiduciary relationship must have existed prior to the creation of the debt.); *Goseland*, 114 B.R. at 268.

**E. 11 U.S.C.§523(a)(6)**

Plaintiffs, alternatively, seek a determination as to the nondischargeability of their debt pursuant to 11 U.S.C.§ 523(a)(6), which excepts from discharge any debt for willful and malicious injury by the defendant to another person or their property.[23] Willful and malicious are two, distinct elements.[24] The plaintiff must establish that a debtor's conduct was both willful and malicious.[25] Although not specifically mentioned in the statute, conversion has served as the basis for claims brought under Section 523(a)(6).[26] "Conversion" under New Mexico law is generally defined as "the unlawful exercise of dominion and control over personal property belonging to another in exclusion or defiance of the owner's rights, or acts constituting an unauthorized and injurious use of another's property, or a wrongful detention after demand has been made."[27] To establish that a claim is nondischargeable under section 523(a)(6), the creditor must prove that the debtor caused a deliberate or intentional injury to the creditor or his

---

[23] *Tucker,* 346 B.R. at 853; *In re Fulgham*, 70 B.R. 168, 169 (Bankr.D.N.M. 1986)

[24] *In re Gagle*, 230 B.R. 174, 179 (Bankr.D.Utah 1999)

[25] *Gagle,* 230 B.R at 179; *Tucker*, 346 B.R. at 853.

[26] *In re Longley,* 235 B.R. 651, 657 (10th Cir.BAP 1999)(noting that "conversion can, under certain circumstances, give rise to a non-dischargeable debt pursuant to §523(a)(6)."); *Bank of Utah v. Auto Outlet, Inc.* (In re Auto Outlet, Inc.), 71 B.R. 674, 676 (Bankr.D.Utah 1987)("Although this section does not specifically mention conversion, 'willful and malicious injury' was intended to include 'willful and malicious conversion.' ")(citing 124 Cong.Rec.H.11096 (daily ed. Sept. 28, 1978); S. 17412 (daily ed. Oct. 6, 1978) (statement of Rep. Edwards and Sen. DeConcini)).

[27] *Nosker v. Trinity Land Co.*, 107 N.M. 333, 337-338, 757 P.2d 803, 807-808 (Ct.App.1988) (citations omitted)

9

property, not just a deliberate or intentional act that leads to injury.[28]  Moreover, section 523(a)(6) requires the creditor to prove its claim by a preponderance of the evidence.[29]

Here, Plaintiffs must establish that the Defendant's conduct was both willful and malicious.[30]  Plaintiffs filed an affidavit claiming that Defendant's sale of the trailers was both willful and malicious.  To support these claims, Plaintiffs state that they contacted the Defendant several times during June 2005 regarding their intent to recover their property and on at least one occasion went to the storage yard to inspect the trailers with a prospective buyer.  Plaintiffs state that Defendant was repeatedly informed about their sale of the trailers.  Furthermore, Plaintiffs claim that they informed the Defendant on several occasions of their intent to use the sale proceeds to repay a debt to the IRS.  Plaintiffs claim that despite their repeated conversations with the Defendant regarding the redemption of the trailers, he sold their property. To further support their claims Plaintiffs cite to Defendant's failure to comply with New Mexico lien statutes and the procedures proscribed for the sale of property subject to said lien.[31]  Plaintiffs assert that Defendant failed to sell the property by public sale and did not turn over the proceeds of the sale after deducting the lien amount. Plaintiffs allege that Defendant made three false statements to the Motor Vehicle Division to facilitate his obtaining title certificates to the Plaintiffs's property and to enable Defendant to sell the property thereby depriving the Plaintiffs

---

[28] *In re Nevarez*, _ B.R. _, 2009 WL 484889, *2 (Bankr.D.N.M.2009)(citing *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974(1998)); *Fulgham*, 70 B.R. at 169.

[29] *In re Gagle*, 230 B.R. 174, 179 (Bankr.D.Utah,1999)(citing *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Dorr, Bentley & Pecha, CPA's, P.C. v. Pasek* (*In re Pasek*), 983 F.2d 1524, 1526 (10th Cir.1993)).

[30] *Gagle* at 178.

[31] NMSA 1978, § 48-3-1 *et. seq*.

of their property.

Defendant disputes that his actions were willful or malicious. Defendant asserts that there is no evidence to support a finding that he intended to cause any injury to Plaintiffs. In his affidavit, Defendant states that he was not aware of the Plaintiffs' tax problems or their intent to repay the IRS with the proceeds from the sale of the trailers. He readily admits that Plaintiffs contacted him and indicated that they wanted or intended to redeem their property but that they never tendered payment. Defendant also admits that he sold the trailers and kept the proceeds.

Plaintiffs have the burden of proving that Defendant knew his actions would cause harm and that he intended to cause the harm thereby resulting in the injury.[32] While Plaintiffs claim that Defendant's failure to sell the property according to the procedures set forth by the lien statutes or to remit the proceeds to them supports a finding that the debt is non-dischargeable under §523(A)(6), this is not evidence of Defendant's knowledge or intent. There remain questions of fact regarding the Defendant's knowledge and intent to cause harm. Therefore, the Court finds there are material issues of fact and summary judgment is DENIED.

/s/ Mark B. McFeeley
MARK B. McFEELEY
United States Bankruptcy Judge

Date Entered on Docket: May 19, 2009

---

[32] *In re Andress*, 345 B.R. 358, 370-371 (Bankr.N.D.Okla.2006)

Copies to:
Kelly P. Alberts
Law Offices of Kelly P. Albers P.C.
650 E. Montana Avenue, Suite D
Las Cruces, New Mexico 88001
*Attorney for Plaintiffs*

Daniel D. James
650 E. Montana Avenue, Suite B
Las Cruces, New Mexico 88001
*Attorney for Plaintiffs*

R. Trey Arvizu, III
Arvizu Law Office
P.O. Box 1479
Las Cruces, New Mexico 88004
*Attorney for Defendant*